## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

JENNER & BLOCK LLP,

        Plaintiff,

        v.

THE REPUBLIC OF SIERRA LEONE,

        Defendant.

C.A. No: 1:22-cv-03599

---

## THE REPUBLIC OF SIERRA LEONE'S
## OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**COHEN SEGLIAS PALLAS GREENHALL**
**& FURMAN, P.C.**

Paul S. Thaler, Esquire (Bar ID 416614)
Jackson S. Nichols, Esquire (Bar ID 975511)
Casey J. McKinnon, Esquire (Bar ID 1643701)
900 Seventh Street, N.W.
Suite 725
Washington, DC 20001
(202) 466-4110
pthaler@cohenseglias.com
Attorneys for The Republic Of Sierra Leone

Date: February 20, 2023

i

# TABLE OF CONTENTS

I.   NATURE AND STATE OF THE PROCEEDINGS ............................................................... 1

II.   STATEMENT OF FACTS ............................................................................................................ 2

     a.   Pre-Contract Period ................................................................................................. 2

     b.   Jenner & Block's Representation of the Republic ................................................. 4

III.  LEGAL ARGUMENT ................................................................................................................ 4

     a.   12(b)(6) Standard ..................................................................................................... 5

     b.   Plaintiff's Count for Breach of Contract Should be Dismissed
         because the Complaint Confirms that the Republic Satisfied its
         Contractual Obligations ......................................................................................... 6

         i.    The Factual Allegations in the Complaint Establish That
             the Republic Satisfied its Payment Obligations ......................................... 6

         ii.   Payment in Excess of a Flat Fee is not Evidence of an
             Engagement Letter to Pay a Larger Amount ............................................. 8

     c.   The Plaintiff Fails to State a Claim for Breach of an Oral Contract
         because any Oral Agreement Lacked the Intent to be Bound, as
         well as Sufficient Specificity .................................................................................. 8

     d.   Plaintiff Fails to State a Claim for Quantum Meruit, Unjust
         Enrichment and Promissory Estoppel because a Valid, Written
         Contract Controls the Relationship between the Parties, and the
         Complaint Fails to Allege the Existence of Work Outside the Contract. ............. 10

         i.    A valid contract governed the relationship between the parties ............... 10

         ii.   The Complaint fails to establish the existence of work
             outside the scope of the contract ............................................................... 10

     e.   In the alternative, Plaintiff Cannot Recover under a Theory of
         Quantum Meruit because Jenner & Block could not Reasonably
         Expect to Recover Hourly Billing Payments under a Flat Fee
         Arrangement ........................................................................................................... 12

     f.   In the Alternative, if Plaintiff's Unjust Enrichment Claim is
         Outside the Contract, Plaintiff Fails to State a Claim because
         Plaintiff had no Reasonable Expectation of Payment, nor was
         Defendant Reasonably Expected to Pay Merely because Jenner &
         Block was Unhappy with the Terms of Its Own Engagement Letter ................... 13

     g.   In the Alternative, if Plaintiff's Promissory Estoppel Claim is
         Outside the Contract, Plaintiff Fails to State a Claim because
         the Purported Promise was not Sufficiently Definite ........................................... 15

     h.   This Court Does Not Have Jurisdiction Over Jenner & Block's
         Extra-Contractual Claims Because The Republic Has Sovereign

Immunity With Respect to Any Claims Apart From Those Governed
by The Engagement Letter and No Exceptions Apply ......................................... 17

    i.    The Republic did not waive its sovereign immunity either
explicitly with respect to Jenner & Block's alleged extra-
contractual legal representation. ............................................................... 17

    ii.    The Republic also did not engage in implicit waiver, as it only
intended to waive immunity with respect to the representation
covered by the Agreement ........................................................................ 19

    iii.   The Republic did not engage in commercial activity and
therefore is not subject to the jurisdiction of this Court for
any claims beyond the terms of the Agreement ........................................ 20

IV.  CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.,
  179 F.3d 1279 (11th Cir. 1999) .............................................................................18

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)...............................................................................................5

CapitalKeys, LLC v. Democratic Republic of Congo,
  15-CV-2079 (KBJ), 2021 WL 2255362 (D.D.C. June 3, 2021), aff'd, 21-7070,
  2022 WL 2902083 (D.C. Cir. July 22, 2022) .......................................................17

Cobell v. Jewell,
  234 F. Supp. 3d 126 (D.D.C. 2017), aff'd sub nom. Cobell v. Zinke, 741 F.
  App'x 811 (D.C. Cir. 2018)..........................................................................6, 10, 13

Connelly v. Swick & Shapiro, P.C.,
  749 A.2d 1264 (D.C. 2000) ...............................................................................7, 15

D.C. v. Nahass,
  699 F. Supp. 2d 175 (D.D.C. 2010).............................................................5, 21, 22

In re Ekekwe-Kauffman,
  210 A.3d 775 (D.C. 2019) ...............................................................................6, 8, 14

Ellipso, Inc. v. Mann,
  460 F. Supp. 2d 99 (D.D.C. 2006)........................................................................14

Fay v. Perles,
  484 F. Supp. 2d 12 (D.D.C. 2007).........................................................................5

Flemming, Zulack & Williamson, LLP v. Dunbar,
  549 F. Supp. 2d 98 (D.D.C. 2008).......................................................................13

Guo Wengui v. Clark Hill, PLC,
  440 F. Supp. 3d 30 (D.D.C. 2020).......................................................................15

Holy Land Found. for Relief & Dev. v. Ashcroft,
  333 F.3d 156 (D.C. Cir. 2003)..............................................................................5

Intelect Corp. v. Cellco P'ship GP,
  160 F. Supp. 3d 157 (D.D.C. 2016).................................................................15, 16

Inversora Murten, S.A. v. Energoprojekt Holding Co.,
    671 F. Supp. 2d 152 (D.D.C. 2009) ...................................................................20

In re Mance,
    980 A.2d 1196 (D.C. 2009) ........................................................................7, 14

U.S. ex rel. Mod. Elec., Inc. v. Ideal Elec. Sec. Co.,
    81 F.3d 240 (D.C. Cir. 1996) ................................................................14

New Econ. Cap., LLC v. New Markets Cap. Grp.,
    881 A.2d 1087 (D.C. 2005) ................................................................9, 16

Olaniyi v. D.C.,
    763 F. Supp. 2d 70 (D.D.C. 2011) ................................................................5

Plesha v. Ferguson,
    725 F. Supp. 2d 106 (D.D.C. 2010) ................................................................10

Smith v. De Novo Legal, LLC,
    905 F. Supp. 2d 99 (D.D.C. 2012) ................................................................5

Steven R. Perles, P.C. v. Kagy,
    473 F.3d 1244 (D.C. Cir. 2007) ................................................................8

Turan Petroleum, Inc. v. Ministry of Oil & Gas of Kazakhstan,
    406 F. Supp. 3d 1 (D.D.C. 2019), aff'd, 21-7023, 2022 WL 893011 (D.C. Cir.
    Mar. 25, 2022) ................................................................20

Watters v. Washington Metro. Area Transit Auth.,
    295 F.3d 36 (D.C. Cir. 2002) ................................................................18

Wilson v. DNC Servs. Corp.,
    315 F. Supp. 3d 392 (D.D.C. 2018) ................................................................16

World Wide Minerals, Ltd. v. Republic of Kazakhstan,
    296 F.3d 1154 (D.C. Cir. 2002) ................................................................18, 21

Wye Oak Tech., Inc. v. Republic of Iraq,
    24 F.4th 686 (D.C. Cir. 2022) ................................................................20, 21

**Statutes**

28 U.S.C § 1603 (d) ................................................................21

28 U.S.C § 1604 ................................................................17

28 U.S.C § 1605 ................................................................17

**Other Authorities**

D.C. R. Prof. Conduct 1.5, Comment [1] ............................................................................8, 13, 14

I.       **NATURE AND STATE OF THE PROCEEDINGS**

This alleged breach of contract matter stems from the attempts of Jenner & Block, LLP ("Jenner & Block" or "the Firm") to collect excess fees purportedly arising from the Firm's representation of the Republic of Sierra Leone (the "Republic") in three matters relating to a dispute with a mining concessionaire.  Following the resolution of those three matters, Jenner & Block filed the instant Complaint, seeking more than $8,000,000 in additional legal fees, beyond the $3,600,000 already paid by the Republic to date, and well in excess of the parties' negotiated contract amount, which called for a flat-fee arrangement in the amount of $3,000,000 for the period in question.  In its Complaint, Jenner & Block presents a variety of legal theories that purportedly justify its demand for fees well beyond those contemplated by the parties and memorialized in their Agreement. However, in each case, Jenner & Block fails to establish the material elements of its claims.

Jenner & Block first alleges that it is entitled to additional fees due to the Republic's breach of the written Agreement, purportedly through a failure to pay amounts due under the Agreement, but the facts alleged in the Complaint fail to allege a breach.  The parties' agreement calls for payments totaling $3,000,000, and Jenner & Block's Complaint openly acknowledges that the Republic paid fees totaling $3,600,000.  As a result, Plaintiff's count alleging breach of the written Agreement is deficient.

Next, Jenner & Block alleges that it is entitled to additional fees as result of a breach of an oral agreement between the parties, but fails to allege facts that would establish the Republic's intent to be bound, as well as the specific terms of the oral agreement that the parties allegedly agreed upon.  As both an intent to be bound and an agreement to material terms are both necessary elements of a valid and enforceable contract, these claims are also deficient.

1

Moving beyond its claims for breach of contract, Jenner & Block next alleges claims for unjust enrichment, promissory estoppel, and *quantum meruit*, but those claims are deficient for a number of reasons.  First, under District of Columbia law, litigants are barred from asserting such claims in the presence of an express contract, which exists in this case.  In addition, while the Complaint makes vague reference to work that was allegedly performed outside the scope of the Agreement, the only specific facts alleged about such work describe efforts that was very clearly within the scope of the Agreement.  Finally, to the extent that Jenner & Block seeks additional fees under the theory of unjust enrichment, those claims must fail because Jenner & Block fails to allege any basis for a reasonable expectation of additional payment, nor does it alleges the existence of a promise of payment with the required specificity.

Setting aside those material flaws in the Complaint, the Republic also notes that it has sovereign immunity with respect to any claims apart from those governed by the parties' Agreement.  As a result, this Court lacks jurisdiction over the entirety of Jenner & Block's extra-contractual claims.

For the reasons set forth below, the Republic respectfully requests that the Court dismiss that Complaint as a result of the Firm's failure to state a claim and for lack of jurisdiction.

## II.    STATEMENT OF FACTS

### a.    Pre-Contract Period

The Republic of Sierra Leone is a nation state in West Africa. Rich in minerals, Sierra Leone is a leading exporter of gems and ore.  This instant matter arises from a dispute between the Republic and a mining concessionaire, Gerald International Ltd. ("Gerald").  Gerald was entitled to mine iron ore in exchange for a commission paid to the Republic.  Due to issues with Gerald's performance under that agreement, the Republic issued an order that, among other things, barred Gerald from conducting further mining operations in the Republic.

2

In response to the Order, Gerald filed three actions against the Republic.  The first was filed in the International Court of Arbitration for the International Chamber of Commerce.  See Plaintiff's Complaint ¶ 12.  The second was before a tribunal in the International Centre of Settlement of Investment Disputes.  See id.  The third was an enforcement proceeding in this Court. See id.

In 2019, the Republic contacted Jenner & Block to discuss legal representation in the Republic's disputes with Gerald.  See id. ¶ 17.  On December 3, 2019, the Republic executed an engagement letter with Jenner & Block ("Agreement").  See Exhibit A to Plaintiff's Complaint. Pursuant to the terms of the Agreement drafted by Jenner & Block, the Firm agreed to represent the Republic in the Gerald matters in exchange for a flat-fee of $1,500,000 per year, paid on a pro-rated quarterly basis.  See Plaintiff's Complaint ¶ 19. The flat-fee contained in that Agreement was the subject of considerable negotiation between the parties: "the negotiated discount fee rate was the basis for the consideration to hire Jenner to represent the GOSL [Government of Sierra Leone]."  See Exhibit A to Plaintiff's Complaint at 2.  The Agreement was silent as to any consideration of payment of fees on an hourly basis and, as a result, lacked terms regarding the hourly rate, the manner and schedule of invoicing for such charges, or the timeline that the Republic would be required to provide payment for such charges.  See id.  While the Agreement does address procedures for modifying its terms, it explicitly required a separate written agreement for the representation of additional parties: "Except as we may otherwise agree in writing, Jenner will represent only the Republic, and will not be representing any of its officials, officers, ministers, employees, or agents in the collective matters."  See id.  Outside of that reference to

modifying the Agreement to encompass representation of additional parties, the Agreement was otherwise silent as to modification, whether oral and written.

### b.   Jenner & Block's Representation of the Republic

Evidently, at some point during Jenner & Block's representation of the Republic, Jenner & Block became dissatisfied with the terms of the Agreement it drafted and executed with the Republic. Despite the flat-fee terms of the Agreement, Jenner & Block began demanding additional payments in excess of the flat-fee agreed upon by the parties. Id. ¶ 53. Upon receipt of those demands, the Republic's representatives merely assured Jenner & Block their concerns would be addressed at a later date.  Id. Importantly, at no time did the Republic commit to any modification to the Agreement, nor did the parties reach any agreement regarding the terms for billings that fell outside of the clear payment terms contained in the Agreement, nor was any such agreement memorialized anywhere.   After the Republic refused to provide the extra-contractual payments demanded by the Firm, Jenner & Block filed the instant Complaint.

## III.   LEGAL ARGUMENT

For the reasons set forth more specifically below, Jenner & Block's claims for additional fees must fail. The Agreement drafted by the Firm governed the relationship between the parties, and provided clear payment terms.  Pursuant to those terms, over the course of the Firm's two-year representation of the Republic, the Firm was entitled to payments totaling $3,000,000.  As the Complaint admits, Jenner & Block has received $3,600,000 in payments from the Republic. In light of those clear terms, and the lack of facts sufficient to support causes of action arising outside of the Agreement, Plaintiff has failed to state a claim and the Complaint should be dismissed with prejudice in its entirety.

a.       **12(b)(6) Standard**

In order to survive a Motion to Dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Courts "must treat the complaint's factual allegations as true ... and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003). "[T]he Court may not rely on facts outside the pleadings and must construe the complaint in the light most favorable to the non-moving party." Fay v. Perles, 484 F. Supp. 2d 12, 14 (D.D.C. 2007).

As this Court succinctly stated:

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are therefore insufficient to withstand a motion to dismiss.  A court need not accept a plaintiff's legal conclusions as true, nor must the court presume the veracity of legal conclusions that are couched as factual allegations.

Smith v. De Novo Legal, LLC, 905 F. Supp. 2d 99, 102 (D.D.C. 2012) (internal citations omitted).

However "even those allegations pleaded with factual support need only be accepted to the extent that 'they plausibly give rise to an entitlement to relief.'" Olaniyi v. D.C., 763 F. Supp. 2d 70, 85 (D.D.C. 2011) (internal citations omitted).  "If the [C]ourt finds that the plaintiffs have failed to allege all the material elements of their cause of action, then the Court may dismiss the complaint without prejudice, or with prejudice, provided that the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," D.C. v. Nahass, 699 F. Supp. 2d 175, 180 (D.D.C. 2010) (internal quotation marks and citations omitted).

**b.**     **Plaintiff's Count for Breach of Contract Should be Dismissed because the Complaint Confirms that the Republic Satisfied its Contractual Obligations**

Plaintiff's Count for breach of contract should be dismissed because the allegations set forth in the Complaint make clear that the Republic satisfied its payment obligations and, additionally, because the payment in excess of a flat fee is not evidence of an agreement to pay additional fees.

**i.**     **The Factual Allegations in the Complaint Establish That the Republic Satisfied its Payment Obligations**

Plaintiff's Complaint fails to state a claim for breach of contract because the facts set forth in the Complaint establish that the Republic satisfied the entirety of its obligations under the Agreement, and in fact, paid an amount in excess of the total flat-fee earned by Jenner & Block. Accordingly, there can be no breach of contract when the Complaint is missing the element of damages.  As a result, Jenner & Block's count for breach of contract should be dismissed with prejudice as a result of its failure to state a claim.

Where the engagement letter "directly addresses the circumstances" before the court, its terms will govern.  Cobell v. Jewell, 234 F. Supp. 3d 126, 161 (D.D.C. 2017), aff'd sub nom. Cobell v. Zinke, 741 F. App'x 811 (D.C. Cir. 2018).  Further, District of Columbia courts view flat fees set forth in an engagement agreement as the start and end point for an attorney's compensation.  See In re Ekekwe-Kauffman, 210 A.3d 775, 791 (D.C. 2019) ("A flat fee by definition constitutes the total amount of compensation a client agrees to pay a lawyer to represent her in a particular matter").  District of Columbia courts have made clear that it is irrelevant whether the work to be done under the flat fee is simple or complex, stating that "[a] flat fee is one that 'embraces all work to be done, whether it be relatively simple and of short duration, or

6

complex and protracted.'" In re Mance, 980 A.2d 1196, 1202 (D.C. 2009) (*quoting* Iowa Sup.Ct. Bd. of Prof. Ethics and Conduct v. Apland, 577 N.W.2d 50, 55 (Iowa 1998)).

Here, the Agreement between the parties provides for a fixed fee for all services contemplated under the Agreement.[1] See Plaintiff's Complaint ¶ 19. The Agreement further required that the Republic pay $1,500,000 annually. Id. The Complaint includes no factual assertion to suggest that there were any written modifications or amendments to the Agreement to alter those clear payment terms. Nor does the Complaint allege a meeting of the minds on a modification to the Agreement. As a result, pursuant to the terms of the Agreement, the Republic was required to provide payment to Jenner & Block in the amount of $3 million.

The Complaint admits that the Republic paid fees totaling $3.6 million. See Plaintiff's Complaint ¶ 59. Whether the work was "far more complex and voluminous" than Jenner & Block expected is irrelevant. See In re Mance, 980 A.2d at 1202. Based on those facts set forth in the Complaint, Jenner & Block concedes that the Republic has satisfied the entirety of its payment obligations under the Agreement. As a result, Jenner & Block has failed to state a legally sufficient claim for breach of contract based on the Republic's failure to satisfy its payment obligations. Jenner & Block's attempt to create damages or an alleged breach by separating $750,000 of the payments made to create a balance due under the Agreement is specious and deserves no consideration. Money is fungible. Payment of funds from the Republic's account goes to Jenner

---

[1] "[W]here a dispute stems from the terms of an agreement, the agreement should be construed against the persons who drafted it." Connelly v. Swick & Shapiro, P.C., 749 A.2d 1264, 1269 (D.C. 2000) (*quoting* Hamilton v. Ford Motor Co., 205 U.S. App. D.C. 37, 40 (1980)) (internal citations omitted). Thus, any ambiguity regarding the obligations of the Republic under Jenner & Block's Agreement must be interpreted against Jenner & Block.

& Blocks' representation of the Republic, not into a particular pot that can be segregated from the payments under the Agreement.

> ### ii. Payment in Excess of a Flat Fee is not Evidence of an Engagement Letter to Pay a Larger Amount

The Republic also notes that Jenner & Block's apparent interpretation of the terms of the Agreement, and its resulting claims as set forth in the Complaint, violate the Firm's ethical obligations under the applicable Rules of Professional Conduct.  Rule of Professional Conduct 1.5 requires attorneys to charge their clients "reasonable fees."  D.C. R. Prof. Conduct 1.5.  Where an attorney obtains an amount in excess of the flat fee, it is evidence of an unreasonable fee, rather than any evidence of an amendment or other agreement to pay more for legal services. In re Ekekwe-Kauffman, 210 A.3d at 791. ("[I]f the agreement called for a flat fee of $5,000, Ms. Ekekwe-Kauffman charged an unreasonable fee when she demanded additional payments in excess of that amount").  Thus, to the extent that Jenner & Block's claim for breach of contract is based on an interpretation of the Agreement that would permit the Firm to collect amounts in excess of the agreed-upon flat fee, those claimed amounts are evidence of an unreasonable fee, and would represent a violation of the applicable Rules of Professional Conduct.

> ### c. The Plaintiff Fails to State a Claim for Breach of an Oral Contract because any Oral Agreement Lacked the Intent to be Bound, as well as Sufficient Specificity

The Plaintiff fails to state a claim for breach of an oral agreement because the Complaint fails to allege facts sufficient to establish: 1) the Republic's intent to be bound to such an oral agreement, and 2) an agreement to material terms.  "Under District of Columbia law, a valid and enforceable contract requires both: (1) intention of the parties to be bound; and (2) agreement as to all material terms."  Steven R. Perles, P.C. v. Kagy, 473 F.3d 1244, 1249 (D.C. Cir. 2007)

(holding that parties did not intend to create an oral contract when the extent of services and the type of services to be rendered under the alleged oral contract were not sufficiently definite).

Based on the facts set forth in the Complaint, Jenner & Block suggests that the Republic agreed to a new, broader scope of representation and substantially higher fees without agreeing to the scope of that representation, nor the fee that would be due for this representation, nor the manner for calculating said fee, whether hourly or otherwise. Due to the flat-fee nature of the initial engagement, the Republic did not know the Firm's hourly rate structure. The only fee included in the Agreement is the above-referenced flat fee for the entirety of the representation.

The Complaint is silent as to all of the above factors that would be necessary for the creation of an oral agreement. The only relevant averments in the Complaint state that Jenner & Block apparently expressed its dismay with the poorly-designed fee arrangement that its attorneys drafted. See Plaintiff's Complaint ¶ 31. Jenner & Block then baldly asserts that "authorized representatives of Sierra Leone repeatedly acknowledged that additional payments were required and appropriate, requested that Jenner & Block continue its work, and agreed to address Jenner & Block's compensation needs." Id. ¶ 32. As pled in the Complaint, the only ensuing "agreement" was Republic officials stating that it would be "addressed." See Plaintiffs Complaint ¶¶ 32, 35-36, 39. In the end, even if those allegations are assumed to be true, statements agreeing to "address" questions of compensation cannot form the basis for an agreement. They are, at best, an agreement to discuss and potentially decide upon an agreement in the future. These verbal assurances are insufficient to create an oral contract. Where "verbal assurances of compensation had always been provided," the District of Columbia Court of Appeals held that "[a]t most, then, the parties orally agreed to enter into a written contract which never materialized." New Econ.

Cap., LLC v. New Markets Cap. Grp., 881 A.2d 1087, 1097 (D.C. 2005) (in the context of a fee arrangement for consulting services).

In conclusion, Jenner & Block is seeking to recover more than $8,000,000 in fees accrued in excess of the flat fee called for under the terms of the Agreement, while also asserting an outstanding sum on a $3,000,000 fixed fee, despite being paid $3,600,000.  However, Jenner & Block's Complaint, despite alleging that an oral contract exists for these fees, fails to state facts which could establish the existence of an oral contract.  Accordingly, Jenner & Block fails to state a claim for breach of an oral contract.

### d.   Plaintiff Fails to State a Claim for *Quantum Meruit,* Unjust Enrichment and Promissory Estoppel because a Valid, Written Contract Controls the Relationship between the Parties, and the Complaint Fails to Allege the Existence of Work Outside the Contract

#### i.   A valid contract governed the relationship between the parties

"[B]oth promissory estoppel and unjust enrichment presuppose that an express, enforceable contract is absent, [and] District of Columbia courts generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct."  Plesha v. Ferguson, 725 F. Supp. 2d 106, 112 (D.D.C. 2010).  Further, "a claim for *quantum meruit* cannot stand where there is an express written agreement between the parties regarding the same subject matter."  Cobell v. Jewell, F. Supp. 3d at 159.  Here, the Complaint acknowledges that a valid contract exists.  See Plaintiff's Complaint ¶¶ 17, 79.  Thus, Plaintiff fails to state a claim for any work that was encompassed by the terms of that Agreement.

#### ii.   The Complaint fails to establish the existence of work outside the scope of the contract

In a transparent attempt to evade the terms of the Agreement, the Complaint states that "Jenner & Block's work in defending the Republic in the Concession Proceedings turned out to be

far more complex and voluminous than either party initially contemplated for three primary reasons." Plaintiff's Complaint ¶ 23.

"First, before Jenner & Block entered its appearance, and during the period in which Sierra Leone was represented by its own officials, the ICC tribunal had already granted Gerald interim, urgent relief, requiring the Republic to permit Gerald to resume iron ore exports." Plaintiff's Complaint ¶ 25. "However, the Republic determined that it would not obey the ICC tribunal's interim order, a determination which greatly multiplied the nature of the proceedings and required Jenner & Block to undertake significant additional work." Plaintiff's Complaint ¶ 25. While Plaintiff attempts to characterize the above-referenced work as outside the scope of the Agreement, it clearly is not. The work described is wholly within the original scope contemplated by the Agreement, which covered the Republic's disputes with Gerald in several different forums.

"Second, the Engagement Letter's fixed fee was founded on the mutual understanding that the Concession Proceedings would follow the usual course of ICC and ICSID matters, but they did not." Plaintiff's Complaint ¶ 26. "Instead, Gerald followed a litigation strategy that greatly multiplied the necessary work and fees, by initiating numerous applications and petitions – often relating to actions taken by Sierra Leone outside the Concession Proceedings – that were unexpected and not usual and customary in similar proceedings." Plaintiff's Complaint ¶ 27. Those allegations, if anything, describe work that was very clearly within the scope of the Agreement, which concerned litigation in the very proceeding in which the work was allegedly performed.

The ensuing paragraph reinforces this fact, stating, evidently for illustrative purposes, that "initially uncontemplated work was required to respond to 12 applications or requests (similar to motions or petitions) relating to interim and ancillary matters, not the ultimate merits. . . ."

11

Plaintiff's Complaint ¶ 28. It is difficult to imagine how engaging in motions practice in litigation that was the very focus of the Agreement's scope of work could possibly be considered outside of the scope of that Agreement.

"Third, … the Republic instructed Jenner & Block to aggressively pursue certain matters ancillary to the merits . . . ." Id. ¶ 30. Again, the Complaint itself confirms that this work was not outside the scope of representation set forth in the Agreement. While Jenner & Block attempts to characterize these issues as "ancillary to the merits," they were performed during the Firm's representation of the Republic in the three matters which formed the scope of work set forth in the Agreement. As a result, the allegations do not provide any basis to conclude that the Firm performed out of scope work.

In sum, the Complaint clearly alleges the existence of a valid contract between the parties. The Complaint then suggests that additional, out of scope work was performed for "three primary reasons," but a review of those "reasons" reveals that the work in question was performed entirely within the three pieces of litigation that Jenner & Block agreed to conduct for a flat fee. Thus, Jenner & Block's Complaint fails to allege the existence of any work that falls outside of the scope of work set forth in the Agreement. Given these failures, Plaintiff fails to state claims for unjust enrichment, promissory estoppel, or *quantum meruit*.

e.    **In the alternative, Plaintiff Cannot Recover under a Theory of *Quantum Meruit* because Jenner & Block could not Reasonably Expect to Recover Hourly Billing Payments under a Flat Fee Arrangement**

Plaintiff's claim for *quantum meruit* damages must also fail because it is patently unreasonable to believe that additional legal fees were due and owing under representation governed by a flat fee agreement.

"An action in *quantum meruit* is an action on a contract implied in fact...." <u>Flemming,</u> <u>Zulack & Williamson, LLP v. Dunbar</u>, 549 F. Supp. 2d 98, 106 (D.D.C. 2008).  To establish entitlement to q*uantum meruit* for attorney's fees, the Plaintiff must prove:

1. That he provided valuable services;
2. For his client;
3. Which services were accepted and enjoyed by the client; and
4. Under such circumstances as reasonably notified the client that the attorney, in performing such services, expected to be paid.

<u>Cobell v. Jewell</u>, 234 F. Supp. 3d at 158.

Here, Jenner & Block provided valuable services for the Republic.  The issue is that these services were valued at an agreed-upon flat fee of $1,500,000 per year. The circumstances surrounding Jenner & Block's representation of the Republic led only to the conclusion that the Agreement governed the relationship between the parties.

Rather than accept the deal that the Firm made for itself, Jenner & Block now petitions the Court to imply an additional contract, implied-in-fact.  <u>See</u> <u>Dunbar</u>, *supra*.  The Complaint would have this Court create a contract for legal services, at an unknown rate, for an unknown scope of representation, in an amount totaling $8,000,000.  Not only is this an unreasonable fee under D.C. R. Prof. Conduct 1.5, which states that "A lawyers fee shall be reasonable," it is unreasonable to expect an oral contract for such a total would be created without these key details.  Thus, the Complaint fails to establish the Firm's entitlement to *quantum meruit* damages.

### f. In the Alternative, if Plaintiff's Unjust Enrichment Claim is Outside the Contract, Plaintiff Fails to State a Claim because Plaintiff had no Reasonable Expectation of Payment, nor was Defendant Reasonably Expected to Pay Merely because Jenner & Block was Unhappy with the Terms of Its Own Engagement Letter

Plaintiff's Complaint fails to allege sufficient factual allegations to establish its reasonable expectation of additional compensation for its work.  The existence of unjust enrichment turns on "whether it is fair and just for the recipient to retain the benefit, not on whether the person or

persons who bestowed the benefit had any duty to do so."  U.S. ex rel. Mod. Elec., Inc. v. Ideal Elec. Sec. Co., 81 F.3d 240, 247 (D.C. Cir. 1996) (internal citations omitted).

A Plaintiff can establish unjust enrichment where:

1.  he had a reasonable expectation of payment,
2.  the defendant should reasonably have expected to pay, or
3.  society's reasonable expectations of person and property would be defeated by nonpayment.

Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 104 (D.D.C. 2006).

Here, Jenner & Block's expectations of payment were not reasonable in light of the flat-fee nature of their representation of the Republic. "A flat fee is one that 'embraces all work to be done . . ..'" In re Mance, 980 A.2d at 1202.   Moreover, this Court has deemed it unreasonable to attempt to recover fees in addition to a fully paid flat-fee.  In re Ekekwe-Kauffman, 210 A.3d at 791.  For this same reason, there was no reason the Republic should reasonably have expected to pay additional fees.

Attorneys' duties to their client must be considered in light of the third factor.  As discussed above, attempting to collect an amount in excess of a flat fee is unreasonable per the D.C. Rules of Professional Conduct.  See In re Ekekwe-Kauffman, 210 A.3d at 791.  Comments to the D.C. Rules of Professional Conduct underscore that "[i]n a new client-lawyer relationship, however, an understanding as to the fee should be promptly established, together with the scope of the lawyer's representation and the expenses for which the client will be responsible."  D.C. R. Prof. Conduct 1.5, Comment [1].  Any failure to establish an understanding of the fee rests solely on Jenner & Block.  Any suggested modification should be clear as to what constitutes the meeting of the minds. Here, the Complaint is the picture of murkiness, void of precision as to what Jenner & Block's client supposedly agreed to pay beyond the terms of the parties' Agreement.

14

Furthermore, "there is an ever present fiduciary responsibility that arches over every aspect of the lawyer-client relationship, including fee." Connelly v. Swick & Shapiro, P.C., 749 A.2d 1264, 1268 (D.C. 2000). The duty of loyalty in this context "has been described as one of 'uberrima fides,' which means, most abundant good faith, requiring absolute and perfect candor, openness and honesty, and the absence of any concealment or deception." Guo Wengui v. Clark Hill, PLC, 440 F. Supp. 3d 30, 36 (D.D.C. 2020) (quoting Herbin v. Hoeffel, 806 A.2d 186, 197 (D.C. 2002)) (holding that an attorney breaches the duty of good faith where it makes false representations to obtain a would-be client). Here, the Firm attempts to shirk the candor, openness and honesty required of every client relationship, and instead seek millions of dollars in attorney's fees – fees not covered by the Agreement, never disclosed in advance to the Republic, and in excess of the flat fee that had been agreed upon.

If this Court determines that a claim for unjust enrichment may exist in light of the Agreement that existed and controlled the relationship between Jenner & Block and the Republic, it still must fail. Jenner & Block had no reasonable expectation of payment in light of the lack of agreement to the terms of additional representation. There was no understanding as to the fee purportedly agreed to be paid and, as a result, there can be no reasonable expectation of payment.

**g.** **In the Alternative, if Plaintiff's Promissory Estoppel Claim is Outside the Contract, Plaintiff Fails to State a Claim because the Purported Promise was not Sufficiently Definite**

Under District law, "[t]o state a claim for promissory estoppel, a plaintiff must show:

1. A promise
2. That the promise reasonably induced reliance on it; and
3. That the promisee relied on the promise to his or her detriment."

Intelect Corp. v. Cellco P'ship GP, 160 F. Supp. 3d 157, 193 (D.D.C. 2016).

Plaintiff's Complaint fails this test at the first hurdle. The Complaint cannot establish the existence of a promise, let alone a promise so definite to bind the Republic in these circumstances.

15

"A promise 'must be definite, as reliance on an indefinite promise is not reasonable,' and it must have 'definite terms on which the promisor would expect the promisee to rely,' although the promise 'need not be as specific and definite as a contract.'" Intelect Corp. v. Cellco P'ship GP, 160 F. Supp. 3d 157, 193 (D.D.C. 2016) (quoting In re U.S. Office Prods. Co. Sec. Litig., 251 F. Supp. 2d 77, 97 (D.D.C. 2003)). Here, any alleged "promise" by the Republic is inadequately pled as to create a cause of action for promissory estoppel. The Complaint does not allege any details regarding this purported promise. It is silent as to the amount the Republic agreed to pay (whether a flat fee or an hourly rate), the additional scope of work on which it would be based, or the timing of any payments.

The second factor, whether the promise reasonably induced reliance, must also fail. The reasonability of reliance is intertwined with the definiteness of the promise. A promise cannot be reasonably relied upon where it is indefinite. Wilson v. DNC Servs. Corp., 315 F. Supp. 3d 392, 399 (D.D.C. 2018). It bears noting that Jenner & Block is a sophisticated entity, and the Firm's alleged reasonable reliance on the comment that the issue would "be addressed" by the Republic falls well short. See New Econ. Cap., LLC v. New Markets Cap. Grp., 881 A.2d at 1097 (holding verbal assurances were insufficient to be relied upon).

Given the Complaint's failure to establish the existence of a promise, the third factor, requiring reliance on the promise, also cannot be met.

Because the Complaint does not sufficiently detail the "promise" it has failed to establish the elements of promissory estoppel. Thus, Jenner & Block's claim to recover under this theory must fail.

**h.** **This Court Does Not Have Jurisdiction Over Jenner & Block's Extra-Contractual Claims Because The Republic Has Sovereign Immunity With Respect to Any Claims Apart From Those Governed by The Engagement Letter and No Exceptions Apply**

The sovereign immunity doctrine provides that "'foreign nations are presumptively immune from the jurisdiction of United States courts' unless one of 'several specific exceptions' laid out in that statute applies." CapitalKeys, LLC v. Democratic Republic of Congo, 15-CV-2079 (KBJ), 2021 WL 2255362, at *6 (D.D.C. June 3, 2021), aff'd, 21-7070, 2022 WL 2902083 (D.C. Cir. July 22, 2022) (quoting Fed. Republic of Ger. v. Philipp, 141 S. Ct. 703, 707 (2021)); 28 U.S.C § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter"). Only when a foreign state explicitly waives immunity either explicitly or implicitly or engages in commercial activity in the United States can it be subject to jurisdiction in the United States. Pursuant to 28 U.S.C § 1605:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

None of the foregoing exceptions, described in § 1605, are applicable in this matter.

**i.** **The Republic did not waive its sovereign immunity either explicitly with respect to Jenner & Block's alleged extra-contractual legal representation.**

Explicit waiver under the sovereign immunity doctrine requires an unambiguous and clear expression that the sovereign wishes to waive its immunity.  "In general, explicit waivers of

17

sovereign immunity are narrowly construed 'in favor of the sovereign' and are not enlarged 'beyond what the language requires.'"  See e.g., World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1162 (D.C. Cir. 2002); Watters v. Washington Metro. Area Transit Auth., 295 F.3d 36, 40 (D.C. Cir. 2002); Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279, 1292 (11th Cir. 1999) ("An express waiver under section 1605(a)(1) must give a 'clear, complete, unambiguous, and unmistakable' manifestation of the sovereign's intent to waive its immunity").  Jenner & Block has brought extra-contractual claims that are not covered by the Agreement and the Republic did not intend, or indicate intent to Jenner & Block that it waived sovereign immunity as it relates to any issues outside those addressed in the Agreement.

The Engagement Letter states that:

> This letter of Engagement shall be governed by and interpreted in accordance with the laws of the District of Columbia in the United States, without giving effect to the choice of law provisions thereof. The United States District Court for the District of Columbia and the appropriate courts of the District of Columbia shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the engagement and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

Exhibit A to Plaintiff's Complaint. By this Letter, the Republic agreed to submit to the jurisdiction of the District of Columbia and waive objection to an action "*concerning the engagement and any matter arising from it.*"  Id. (emphasis added).  By definition, Jenner & Block's Complaint arises out of claims allegedly arising from representation beyond the scope of the engagement. Jenner & Block defines the terms of engagement as follows:

> Jenner will represent you in connection with, and the scope of its engagement and duties to you shall relate solely to an arbitration captioned SL Mining Ltd. v. The Government of Sierra Leone, before a tribunal convened pursuant to the International Court of Arbitration of the International Chamber of Commerce ("the ICC matter"); an arbitration before a tribunal convened under the auspices of the

International Centre of the Settlement of Investment Disputes captioned Gerald International Ltd. v. the Republic of Sierra Leone ("the ICSID matter"); and a proceeding currently before the United States District Court for the District of Columbia docketed as 1:19-cv-02888-RBW ("the Enforcement matter"), known herein as "the collective Matters").

Throughout its Complaint, Jenner & Block refers to "out-of-scope work" a total of 18 times, for which it alleges it was unpaid.  Jenner & Block does not provide any definition of this term, but the only logical definition of this term is that it refers to the services that Jenner & Block allegedly provided, and were allegedly outside of the scope of the Agreement.  As discussed above, the Complaint contains no allegation sufficient to conclude that there was in fact any "out-of-scope work."  However, even if Jenner & Block had provided some factual basis for those allegations regarding out-of-scope work, Jenner & Block's Complaint does not contend that the Republic made any oral, or written, affirmations that it waived its sovereign immunity in regards to the alleged "out-of-scope work" and thus cannot contend that the Republic waived immunity to such alleged work that was not covered under by the Agreement.

> ii.   **The Republic also did not engage in implicit waiver, as it only intended to waive immunity with respect to the representation covered by the Agreement**

The Republic has not implicitly waived sovereign immunity, as none of the three implicit wavier exceptions apply.  It has not: 1) filed a responsive pleading without raising this defense; 2) agreed to participate in arbitration in a foreign country with regard to its disputes with Jenner & Block[2]; or 3) intended to waive sovereign immunity by agreeing that the laws of a foreign country

---

[2] To the extent that the Republic agreed to engage in arbitration with Gerald, such an agreement is unrelated to this matter.  Turan Petroleum, Inc. v. Ministry of Oil & Gas of Kazakhstan, 406 F. Supp. 3d 1, 12 (D.D.C. 2019), aff'd, 21-7023, 2022 WL 893011 (D.C. Cir. Mar. 25, 2022), and aff'd, 21-7023, 2022 WL 893011 (D.C. Cir. Mar. 25, 2022) (quoting Heroth v. Kingdom of Saudi Arabia, 565 F. Supp. 2d 59, 65 (D.D.C. 2008)) ("However, the Court notes that even if the Ministry had impliedly waived its sovereign immunity in the Arys concession agreement through a choice of law or arbitration provision, "a contractual waiver of immunity does not apply to third parties who are not privy to the contract").

will govern a contract.  <u>Inversora Murten, S.A. v. Energoprojekt Holding Co.</u>, 671 F. Supp. 2d 152, 155 (D.D.C. 2009) ("While the FSIA lacks a definition of an implied waiver, the D.C. Circuit has held that there are three situations where a foreign state or an agency or instrumentality of a foreign state implicitly waives the defense of sovereign immunity: 'where a foreign state has filed a responsive pleading without raising the defense of sovereign immunity'; where a foreign state agrees to participate in arbitration in another country; and where a foreign state agrees in a contract that the laws of another country will govern that contract….However, the D.C. Circuit construes the implied waiver provision narrowly."); <u>Wye Oak Tech., Inc. v. Republic of Iraq</u>, 24 F.4th 686, 691 (D.C. Cir. 2022) ("Thus, we have long held that "implicit in § 1605(a)(1) is the requirement that the foreign state have intended to waive its sovereign immunity….The legislative history of the FSIA provides only three examples of implicit waivers by a foreign state, H.R. Rep. No. 94-1487, at 18 (1976), and courts have been reluctant to recognize an implicit waiver of sovereign immunity in other circumstances.") (internal quotations omitted).

To the extent that the Republic has implicitly waived its sovereign immunity pursuant to the D.C. choice of law provision of the Agreement, as stated *supra*, such waiver is only applicable to those matters covered in the Agreement and the gravamen of Jenner & Block's Complaint concerns the alleged "out-of-scope work."

      **iii.**      **The Republic did not engage in commercial activity and therefore is not subject to the jurisdiction of this Court for any claims beyond the terms of the Agreement**

The Republic did not engage in commercial activity and rather acted as a government body. 28 U.S.C § 1603 (d): "A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  In determining whether a party engaged in a commercial

activity, the court "(1) identifies the specific conduct that the plaintiff's claims are based upon, and then determines (2) whether that conduct qualifies as a commercial activity; (3) whether that conduct was carried on in the United States; and (4) whether that conduct was carried on by the foreign state." World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1162–63 (D.C. Cir. 2002).

The Republic did not engage in commercial activity that had substantial contact with the United States. "Thus, the first clause of section 1605(a)(2) requires a plaintiff's claim to be 'based upon' an aspect of the foreign state's commercial activity that has a 'substantial contact with the United States.'" Wye Oak Tech., Inc., 24 F.4th at 692. Instead, the representation was provided in England and arose out of disputes in the Republic. Moreover, the activity for which alleged accrued fees were unpaid, as discussed *supra*, was outside of the scope of the Agreement between Jenner & Block and the Republic.

## IV.   **CONCLUSION**

The Complaint fails to establish the material elements for *any* of the claims made therein. Its failure to do so requires dismissal of the instant claims. See D.C. v. Nahass, 699 F. Supp. 2d at 180. Further, no amendment thereto would cure these deficiencies. Id. Claims for *quantum meruit*, unjust enrichment and promissory estoppel must fail in light of the existence of a signed contract and the Complaint's failure to allege the existence of work outside the contract. Moreover, no breach of contract claim may be cured because, by Jenner & Block's own admission, the Republic complied with the terms of the Agreement. Jenner & Block was paid $3,600,000 for the $3,000,000 of the flat fee earned. No additional oral contract existed for the additional work. Where, as here, no amendment will cure a deficiency in the Complaint, it warrants dismissal with prejudice. Id.

**COHEN SEGLIAS PALLAS GREENHALL
 & FURMAN, P.C.**

/s/ Paul S. Thaler
Paul S. Thaler (Bar ID 416614)
Jackson S. Nichols (Bar ID 975511)
Casey J. McKinnon (Bar ID 1643701)
900 Seventh Street, N.W.
Suite 725
Washington, DC 20001
(202) 466-4110
pthaler@cohenseglias.com
Attorneys for the Republic of Sierra Leone

Date: February 20, 2023

22