# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JENNER & BLOCK LLP**, <br><br> Plaintiff, <br><br> v. <br><br> **REPUBLIC OF SIERRA LEONE**, <br><br> Defendant. | Civil Action No. 22-cv-3599 (TSC) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Jenner & Block LLP ("Jenner & Block"), a U.S. law firm, sued the Republic of Sierra Leone ("Sierra Leone"), a foreign nation and Jenner & Block's former client, for failure to pay its legal fees. Compl. ¶¶ 1–4, ECF No. 1. Sierra Leone retained Jenner & Block in 2019 and agreed to pay "a flat fee of $1,500,000" per year. *Id.* ¶ 19; Compl. Ex. A at 2, ECF No. 1-1. Jenner & Block alleges that Sierra Leone orally agreed to provide additional compensation, however, because the work exceeded the scope anticipated by the flat fee. Compl. ¶¶ 31–32. Jenner & Block continued the representation, but Sierra Leone subsequently refused to pay the remaining fee balance. *Id.* ¶¶ 76–77. Jenner & Block then filed this action for breach of contract, or in the alternative, breach of implied contract based on *quantum meruit*, unjust enrichment, or promissory estoppel. *Id.* ¶¶ 78–109.

Sierra Leone moves to dismiss, arguing that (1) as a sovereign state, it is immune and the court lacks jurisdiction, and (2) the Complaint fails to state a claim upon which relief can be granted. Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s MTD") at 1–2, ECF No. 16-1. For the following reasons, the court will DENY Sierra Leone's motion.

## I.    BACKGROUND

From December 2019 through October 2021, Jenner & Block represented Sierra Leone in litigation concerning Sierra Leone's contract with an iron ore mining company, Gerald International Ltd and its affiliates ("Gerald").  Compl. ¶¶ 1, 9–10.  After Sierra Leone prohibited Gerald from removing or selling additional ore from Sierra Leone's mines, Gerald commenced three proceedings: "(a) an arbitration before a tribunal convened under the International Court of Arbitration of the International Chamber of Commerce ("ICC"); (b) an investment treaty arbitration before a tribunal convened under the International Centre of the Settlement of Investment Disputes ("ICSID"); and (c) an arbitral enforcement proceeding before the United States District Court for the District of Columbia," (collectively, the "Concession Proceedings"). *Id.* ¶ 12.  Jenner & Block and Sierra Leone agreed to a written engagement letter (the "Engagement Letter"), which defined the scope of the engagement as "solely" related to the Concession Proceedings.  *Id.* ¶¶ 17–18; Compl. Ex. A at 1.  Jenner & Block was not obliged to represent Sierra Leone "in any other matter arising from the [Concession Proceedings] unless specifically requested by [Sierra Leone] and agreed."  Compl. Ex. A. at 1.

The Engagement Letter provided a specific payment structure and selected the governing law and appropriate dispute forum.  Compl. ¶¶ 19–21.  In exchange for Jenner & Block's legal services, Sierra Leone agreed to pay "a flat-fee total of 1,500,000 USD per year" in quarterly installments, excluding out of pocket expenses, and agreed to settle any invoices within thirty days. Compl. Ex. A. at 2–3.  The Engagement Letter provided that United States and the District of Columbia law governed and this court and the courts of the District of Columbia possessed "exclusive jurisdiction."  *Id.* at 4.  The parties agreed to "irrevocably waive any right they may have to object to any action being brought in those Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction."  *Id.*

Jenner & Block alleges that the work quickly became "more complex and voluminous" than anticipated. Compl. ¶ 23. It identifies three reasons for the increase in work: (1) Sierra Leone decided not to obey an interim order entered in Gerald's favor by the ICC tribunal; (2) the Concession Proceedings did not follow "the usual course of ICC and ICSID matters;" and (3) Sierra Leone instructed Jenner & Block to pursue issues beyond the merits, such as claiming the ICC's arbitrator was biased. *Id.* ¶¶ 24–30. In August 2020, Jenner & Block notified Sierra Leone that it required additional compensation for the unexpected workload. *Id.* ¶ 31. Jenner & Block alleges that Sierra Leone "repeatedly acknowledged that additional payments were required," and several high-ranking officials, including President Julius Maada Wonie Bio, confirmed Sierra Leone would address the additional fees. *Id.* ¶¶ 34–39.

Throughout the representation, Sierra Leone paid Jenner & Block approximately $3.6 million in legal fees—$2.25 million pursuant to the flat-fee arrangement and $1.35 million for out-of-scope work. *Id.* ¶ 59. The out-of-scope payments corresponded to separate invoices, ranging from $100,000 to $500,000, covering August 2020 to December 2021. *Id.* ¶¶ 40–46. Jenner & Block alleges that Sierra Leone still owes $8.1 million—$750,000 pursuant to the flat-fee arrangement and $7.35 million for additional out-of-scope work. *Id.* ¶ 60. In July 2021, Sierra Leone allegedly promised to pay $6 million to settle the outstanding fees. *Id.* ¶¶ 61–70. Despite repeated requests throughout 2021 and 2022, Jenner & Block claims that the legal fees remain unpaid. *Id.* ¶¶ 76–77.

## II.    LEGAL STANDARD

Sierra Leone seeks dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), alleging that it cannot be sued under the doctrine of foreign sovereign immunity. Federal district courts have limited jurisdiction—"they possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

Foreign sovereign immunity is an issue of subject matter jurisdiction. *Foremost-McKesson, Inc.*

*v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C. Cir. 1990). When deciding a Rule 12(b)(1)

motion, the court must "assume the truth of all material factual allegations in the complaint and

'construe the complaint liberally, granting plaintiff the benefit of all inferences.'" *Am. Nat'l Ins.*

*Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970,

972 (D.C. Cir. 2005)).

Sierra Leone also moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for

failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to

dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292

F.3d 235, 242 (D.C. Cir. 2002). To survive, a "complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

has facial plausibility when the facts pleaded allow "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* The court

"may consider not only the facts alleged in the complaint but also documents attached to or

incorporated by reference in the complaint." *Demissie v. Starbucks Corp. Off. & Headquarters*,

19 F. Supp. 3d 321, 324 (D.D.C. 2014).

### III.    ANALYSIS

#### A.  Subject-Matter Jurisdiction

Under the Foreign Sovereign Immunities Act ("FSIA"), "foreign nations are presumptively

immune from the jurisdiction of United States courts." *Fed. Republic of Germany v. Philipp*, 592

U.S. 169, 173 (2021). If an exception to immunity applies, however, "the foreign state shall be

liable in the same manner and to the same extent as a private individual under like circumstances." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983) (quoting 28 U.S.C. § 1606). If no exception applies, the district court has no jurisdiction. *Id.* at 489. The plaintiff "bears the initial burden" of demonstrating that an exception applies, at which point "the sovereign bears the ultimate burden of persuasion to show the exception does not apply." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 696 (D.C. Cir. 2022) (quoting *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013)). The court accepts the factual allegations in a complaint as true to "determine whether they bring the case within any of the exceptions to immunity." *Phx. Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

Jenner & Block concedes that Sierra Leone qualifies as a foreign state under the FSIA but argues the waiver exception applies. Compl. ¶ 4; Pl.'s Opp'n to Def.'s MTD ("Pl.'s Opp'n")at 22, ECF No. 19. A foreign state is not immune if it "has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). The explicit waiver exception is satisfied when "the foreign state expressly consents—for example, in the text of a treaty or a contract—to forgo its immunities with regard to a certain class of disputes or a particular subject matter." *Ashraf-Hassan v. Embassy of Fr. in the U.S.*, 40 F. Supp. 3d 94, 99 (D.D.C. 2014). An implicit waiver "requires clear evidence of the foreign sovereign's intention to dispense with its immunity." *Id.* at 100. Explicit or implicit waivers are construed narrowly in favor of the sovereign nation. *Id.*; *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002). And the claims asserted must be the "kinds of claims for which [the foreign state] waived immunity." *World Wide Minerals*, 296 F.3d at 1162.

Jenner & Block contends that Sierra Leone explicitly waived its sovereign immunity pursuant to the Choice of Law and Forum provision of the Engagement Letter.  Pl.'s Opp'n at 22. The court need not decide whether Sierra Leone explicitly waived immunity because the implicit waiver exception is plainly satisfied.  "[A]n implied waiver may arise where a foreign state concludes a contract that contains a choice-of-law clause designating the laws of the United States as applicable."  *Ashraf-Hassan*, 40 F. Supp. 3d at 100; *see also Foremost-McKesson*, 905 F.2d at 444 ("The legislative history of FSIA gives three examples of circumstances in which courts have found implied waivers: . . . (2) a foreign state has agreed that the law of a particular country governs a contract, . . . " (citing H.R. Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976); Sen. Rep. No. 1310, 94th Cong., 2d Sess. 18 (1976)); *Wye Oak Tech.*, 24 F.4th at 691.  The contract at issue here contains a choice of law clause designating "the laws of the District of Columbia in the United States" as applicable and expressly grants "exclusive jurisdiction" to courts in this jurisdiction. Compl. Ex. A at 4.  "Clearly, there can be no more obvious and implicit waiver of sovereign immunity than the sovereign's express intent to subject itself to the jurisdiction of a foreign court as demonstrated by a choice of law clause within a contract."  *Ghawanmeh v. Islamic Saudi Academy*, 672 F. Supp. 2d 3, 9 (D.D.C. 2009).  By accepting the terms of the Engagement Letter, Sierra Leone impliedly waived its immunity under § 1605(a)(1) of the FSIA.

The next issue is whether Jenner & Block asserts the "kinds of claims for which [Sierra Leone] waived immunity."  *World Wide Minerals*, 296 F.3d at 1162.  Under the Engagement Letter's choice of law provision, Sierra Leone implicitly waived immunity for "any claim, dispute or difference concerning the engagement and any matter arising from it."  Compl. Ex. A at 4.  That waiver encompasses Jenner & Block's claim that Sierra Leone breached the terms of the Engagement Letter, a claim which plainly "concern[s] the engagement."  *Id.*  A closer question is

whether it covers Jenner & Block's breach of contract claim based on an oral agreement and the implied contract claims. Sierra Leone argues those claims derive from distinct contracts, which the choice of law clause cannot encompass. Def.'s MTD at 20. The court is persuaded otherwise. The choice of law provision includes any claim "concerning the engagement and any matter arising from it." Compl. Ex. A at 4. Jenner & Block's representation of Sierra Leone in the Concession Proceedings is the engagement. *Id.* at 1. Although the implied contract claims seek fees for work allegedly not covered by the flat-fee arrangement, those claims still *arise from* Jenner & Block's work in the Concession Proceedings. And, in general, courts in this jurisdiction have found that FSIA contractual waivers are not limited solely to breach of contract claims but also cover claims arising from the contractual relationship. *See, e.g.*, *Ashraf-Hassan*, 40 F. Supp. 3d at 101 (finding implied waiver of sovereign immunity for purposes of Title VII and other employment-related claims where employment contract was governed by New York law); *Ghawanmeh*, 672 F. Supp. 2d at 10 (finding implied waiver of sovereign immunity from choice of law provision in employment contract covered tort and contract claims). By implicitly waiving immunity for "any claim . . . concerning the engagement," Sierra Leone waived sovereign immunity for all claims asserted here under § 1605(a)(1) of the FSIA. Accordingly, the court has subject-matter jurisdiction over Jenner & Block's claims.

### B. Breach of Contract

Jenner & Block asserts two breach of contract claims. First, Sierra Leone breached the Engagement Letter by refusing to pay $750,000 of the flat fee. Compl. ¶¶ 78–83. Second, Sierra Leone breached an oral agreement by refusing to pay $7.35 million in legal fees for the out-of-scope work. *Id.* ¶¶ 84–91. "To *prevail* on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a

breach of that duty; and (4) damages caused by breach." *Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114, 131 (D.D.C. 2018) (quoting *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015)).  To survive a Rule 12(b)(6) motion to dismiss, however, "it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." *Id.* (quoting *Francis*, 110 A.3d at 620); *see, e.g.*, *Pernice v. Bovim,* 183 F. Supp. 3d 84, 89 (D.D.C. 2016); *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 319 (D.D.C. 2015).  At this juncture, accepting the allegations as true and drawing all reasonable inferences in Jenner & Block's favor, *Iqbal*, 556 U.S. at 678, the Complaint adequately states a breach of contract claim under Counts I and II.

Regarding the written contract claim, Jenner & Block alleges that Sierra Leone accepted the Engagement Letter and the agreement terms—that Jenner & Block would provide legal services to Sierra Leone in exchange for a flat fee.  Compl. ¶¶ 17–21.  Jenner & Block claims that it provided the legal services but did not receive the complete flat fee and reports the exact unpaid amount.  *Id.* ¶¶ 59–60.  Sierra Leone urges the court to find that it performed in full by substituting payments for other services for the outstanding flat-fee amount.  Def.'s MTD at 6.  But construing the factual allegations in that manner subverts the Rule 12(b)(6) standard.  Sierra Leone argues it paid Jenner & Block $600,000 more than the flat fee.  *Id.* at 7.  But the Complaint alleges, and the court must accept as true, that $1.35 million of Sierra Leone's payments corresponded to separate invoices for work not covered by the flat-fee arrangement.  Compl. ¶¶ 40–45.  The additional payments do "not extinguish either the [parties'] original contract or [the] right to sue for its breach."  *See Nattah v. Bush*, 605 F.3d 1052, 1058 (D.C. Cir. 2010).  And Sierra Leone "does not possess a unilateral right to retroactively reduce or revoke contractually agreed-upon benefits that have already vested."  *See id.* at 1057.  The Engagement Letter provides a specific flat-fee amount

and installment schedule, which Jenner & Block alleges that Sierra Leone failed to satisfy. Compl. ¶¶ 17, 59–60. Jenner & Block thus adequately pleads breach of contract in Count I. *See Winston & Strawn LLP v. Law Firm of John Arthur Eaves*, 47 F. Supp. 3d 68, 75–76 (D.D.C. 2014). The court will deny Sierra Leone's motion to dismiss Count I.

Jenner & Block's breach of an oral contract claim also withstands Sierra Leone's motion to dismiss. At this stage, Jenner & Block need only describe "the terms of the alleged contract and the nature of the defendant's breach." *Molock*, 297 F. Supp. 3d at 131 (quoting *Francis*, 110 A.3d at 620). "A complaint meeting these basic requirements will survive a motion to dismiss even if it is 'imprecise or vague.'" *Pernice,* 183 F. Supp. 3d at 89 (quoting *Burnett v. Am. Fed'n of Gov't Emps.*, 102 F. Supp. 3d 183, 193 (D.D.C. 2015)). Jenner & Block clears that low bar. The Complaint alleges "the existence of a contract—payment in return for services—and breach— failure to pay the plaintiff." *Id.* It states that Sierra Leone "agreed to address Jenner & Block's compensation needs," and, in exchange, Jenner & Block agreed to continue its work. Compl. ¶¶ 32–39. Jenner & Block claims that it performed by continuing to provide legal services and, ultimately, achieving a settlement in the Concession Proceedings, but that Sierra Leone breached by refusing to pay the outstanding fees. *Id.* ¶¶ 47–52, 76. "These allegations adequately make out a breach-of-contract claim at the motion-to-dismiss stage." *Molock*, 297 F. Supp. 3d at 131; *see also Burnett*, 102 F. Supp. 3d at 193 ("[Plaintiff's] complaint sufficiently alleges the existence of a contract, its general terms, and the contractual obligation that Defendant purportedly violated (*i.e.* failing to pay).").

Ignoring "the liberal pleading standard for contract claims in this jurisdiction," *Pernice*, 183 F. Supp. 3d at 88, Sierra Leone contends that the Complaint fails to allege the essential elements of a valid, enforceable contract: "(1) intention of the parties to be bound; and (2)

agreement as to all material terms." Def.'s MTD at 8–9 (citing *Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1249 (D.C. Cir. 2007)). But that inquiry is not appropriate now—"whether a valid, enforceable oral contract was actually formed between the parties is an inquiry to be considered as summary judgment." *Molock*, 297 F. Supp. 3d at 132. At the motion to dismiss stage, the Complaint need only provide "sufficient notice of plaintiff's claim." *See Badwal*, 139 F. Supp. 3d at 319. The allegations here may be "imprecise," *Burnett*, 102 F. Supp. 3d at 193, but they "are sufficient to put the defendant on notice of the nature of plaintiff's contract claim," *Badwal*, 139 F. Supp. 3d at 319. Accordingly, the court will deny Sierra Leone's motion to dismiss Count II.

## C. Breach of Implied Contract

Jenner & Block asserts three claims for breach of an implied contract based on *quantum meruit*, unjust enrichment, and promissory estoppel in the alternative. Compl. ¶¶ 92–109. Sierra Leone asks the court to dismiss these claims because Jenner & Block simultaneously asserts breach of contract claims. Def.'s MTD at 10. In general, the existence of an express, enforceable contract precludes recovery based on *quantum meruit*, unjust enrichment, or promissory estoppel. *See Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010). When "the parties have a contract," the "court will not displace the terms of that contract and impose some other duties not chosen by the parties.'" *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) (quoting *Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996)). "That rule does not apply, however, if the contract is invalid or does not cover the issue in dispute." *Id.* Where the validity or scope of the contract is disputed, dismissal of alternative theories at the outset is improper. *See, e.g.*, *Smith v. Rubicon*, 254 F. Supp. 3d 245, 250–251 (D.D.C. 2017) (denying motion to dismiss unjust enrichment claims when "the defendant casts doubt on the validity of the contract"); *United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 130 (D.D.C. 2015) ("[Defendant's] argument that the

Contract was not validly formed . . . makes the [Plaintiff's] alternative quasi-contract claims all the more reasonable."); *Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 100 (D.D.C. 2020). (If "Plaintiffs cannot prove the existence of a valid contract in the first instance, . . . then they may rely on quasi-contractual theories of liability to seek restitution of the benefits they allegedly conferred on Defendants in reliance on Defendants' alleged assurances." (internal quotations omitted)). That exception applies here. Sierra Leone disputes whether Jenner & Block provided services outside the scope of the Engagement Letter and, if so, whether the parties formed a valid, oral agreement regarding the alleged out-of-scope work. Def.'s MTD at 10–12. Because the contracts are contested, the court will not dismiss Jenner & Block's alternative theories of recovery as inconsistent with the breach of contract claims.

The court must still evaluate whether Jenner & Block sufficiently states each claim. For *quantum meruit*, a complaint must allege: "1) valuable services rendered by the plaintiff; 2) for the person from whom recovery is sought; 3) which services were accepted and enjoyed by that person; and 4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid." *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246 (D.C. Cir. 1996) (quoting *Providence Hosp. v. Dorsey*, 634 A.2d 1216, 1219 n.8 (D.C. 1993)). The Complaint contains facts from which the court may infer each element. It alleges that: 1) Jenner & Block provided legal services which had monetary value and resulted in a "highly advantageous settlement" for Sierra Leone, Compl. ¶¶ 31–39, 47–50, 59–60; 2) who received the legal services, *id.* ¶ 22; 3) Sierra Leone repeatedly asked Jenner & Block to continue providing legal services and did not raise any concerns regarding its work, *id.* ¶ 55; and 4) Jenner & Block notified Sierra Leone on numerous occasions that it expected additional compensation, *id.* ¶ 53. These allegations are sufficient to state a *quantum meruit* claim.

An unjust enrichment claim requires that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Butler*, 459 F. Supp. 3d at 101 (quoting *News World Commc'ns, Inc. v. Thompson*, 878 A.2d 1218, 1222 (D.C. 2005)); *see also Smith*, 254 F. Supp. 3d at 249. Reading the Complaint in its entirety and accepting the allegations as true, the court finds that Jenner & Block states an unjust enrichment claim. It alleges that the legal services provided resulted in a "highly advantageous settlement" for Sierra Leone. Compl. ¶¶ 31–39, 47–50, 59–60. The settlement resolved claims against Sierra Leone, and the Concession Proceedings were dismissed or stayed. *Id.* ¶ 52. And Sierra Leone's current payments "grossly undercompensate Jenner & Block for its work." *Id.* ¶¶ 55–60.

Finally, to state a claim for promissory estoppel, a complaint must allege "(1) the existence of a promise, (2) that the promise reasonably induced reliance on it, and (3) that the promise relief on the promise to his detriment." *Alemayehu v. Abere*, 298 F. Supp. 3d 157, 164 (D.D.C. 2018) (quoting *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147 (D.D.C. 2007), *aff'd*, 552 F.3d 836 (D.C. Cir. 2009)). The promise must be "sufficiently 'definite' because 'reliance on an indefinite promise is not reasonable.'" *Id.* (quoting *In re U.S. Off. Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 73 (D.D.C. 2003)). Sierra Leone contends that the Complaint fails to allege a "definite" promise to pay additional legal fees, such that Jenner & Block's reliance was unreasonable. Def's MTD at 15–16. The court disagrees. Jenner & Block alleges that Sierra Leone repeatedly assured it that additional compensation was forthcoming and provided five additional payments for out-of-scope work from November 2020 to December 2021. Compl. ¶¶ 34–46. When Jenner & Block raised the need for additional compensation, Sierra Leone instructed it to continue working and

stated the fees would be addressed. *Id.* Such allegations adequately state a promissory estoppel claim. *See Butler*, 459 F. Supp. 3d at 100–01.

In urging the court to dismiss Jenner & Block's implied contract claims, Sierra Leone largely disputes or ignores the factual allegations, which have no persuasive value at this stage. Therefore, the court will DENY Sierra Leone's motion to dismiss Counts III through V.

## IV.    CONCLUSION

For the reasons stated above, Sierra Leone's Motion to Dismiss the Complaint is DENIED.

Date: January 23, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge